**In re LONG ISLAND R. CO.**
Bankr. No. 47970.

United States District Court
E. D. New York.
Nov. 7, 1951.

See also, 100 F.Supp. 996.

Sherman & Sterling & Wright, New York City (Boykin C. Wright, New York City, of counsel), for the Trustee.

Edward W. Bourne, New York City, for Long Island Transit Authority.

Denis M. Hurley, Corp. Counsel of the City of New York, Brooklyn, N. Y. (James J. Thornton, Asst. Corporation Counsel, New York City, of counsel), for City of New York.

Conboy, Hewitt, O'Brien & Boardman, New York City (John Vance Hewitt, New York City, of counsel), for the Pennsylvania Railroad and American Contract and Trust Co.

Milbank, Tweed, Hope & Hadley, New York City (Orville W. Wood, New York City, of counsel), for the Chase National Bank of the City of New York, as Trustee under the Refunding Mortgage.

Cravath, Swaine & Moore, New York City (Robert O. Hancox, New York City, of counsel), for Chemical Bank & Trust Co.

Nathaniel Goldstein, Atty. Gen. of the State of New York (Abe Wagman, Asst. Atty. Gen., of counsel), for the State.

G. Burchard Smith, County Atty. of Nassau County, Mineola, N. Y. (Orrin G. Judd, Special Counsel, New York City, of counsel), for Nassau County.

Fred J. Munder, County Atty. of Suffolk County, Hurtington, N. Y. (Orrin G. Judd, Special Counsel, New York City, of counsel), for Suffolk County.

KENNEDY, District Judge.

On December 8, 1950, the former trustees in this proceeding having resigned, I appointed to succeed them General William H. Draper, Jr. The appointment of General Draper was supported by the Governor of the State of New York, the Mayor of the City of New York, the New York Public Service Commission, the supervisor of Suffolk County, the executive of Nassau County, and the Long Island Railroad Commission. The appointment of General Draper was ratified by the Interstate Commerce Commission on December 21, 1950, and he has served as trustee ever since.

On June 30, 1951, Governor Dewey appointed a Long Island Transit Authority, pursuant to legislation passed at the spring session of the New York Legislature. The authority consists of General Draper, Mr. Tracy S. Voorhees and Mr. George E. Roosevelt. No possible conflict of interest could then be discerned by anybody in the fact that General Draper was both trustee of the road and head of the authority. However, commencing in October 1951 the Pennsylvania Railroad, the largest single creditor and stockholder, took the position that it could not enter into any discussions or negotiations with the authority concerning the permanent reorganization of the railroad and the formulation of a plan so long as General Draper held both positions. The result was that on October 29, 1951, General Draper submitted his resignation to me and on the following day (October 30, 1951) I caused to be present in court all of those interested in the problem presented by that resignation. The minutes of that hearing I have made part of this record and they will be before the Interstate Commerce Commission. Those minutes disclose the appearances at the hearing on October 30, 1951.

After explaining the need for his resignation General Draper recommended as his successor Mr. William Wyer of Rumson, New Jersey. All of those present supported the appointment of Mr. Wyer, as the minutes will indicate. I then caused notice of formal hearing to be held pursuant to the statute, 11 U.S.C.A. § 205, sub. c(1) and

(2), and set the date for November 5, 1951. All of the parties interested who had appeared on October 30, 1951 reiterated on November 5, 1951 the position previously taken by them that William Wyer was extremely eligible to succeed General Draper. The only other nomination submitted was that of Mr. Edmund F. Saxton who supported himself for the appointment and whose qualifications are furnished as part of the record.

At the hearing of October 30, 1951 no opposition to or criticism of Mr. Wyer was suggested except by myself. I called to the attention of Mr. Orrin G. Judd, counsel for the Counties of Nassau and Suffolk, that sometime in 1936 Mr. Wyer's activity had been criticised at Senate hearings dealing with the Missouri Pacific Railroad. The reason I singled out Mr. Judd was because I knew that he was familiar with the record in that proceeding. (It later developed that the facts were known to practically everyone concerned.) Mr. Judd stated that the incident in question, in his judgment, formed no obstacle to the appointment of Mr. Wyer, and that in fact after 1936 he had occupied various important quasi-public positions. For example, Mr. Wyer was retained by the Public Service Commission of the State of New York as its consultant in connection with Long Island Rail Road affairs. He had also been retained by the City of New York as its expert in transactions relating to the New York Central Railroad. Between October 30, 1951 and November 5, 1951 the metropolitan dailies gave considerable publicity to the colloquy between myself and Mr. Judd on this point.

On November 5, 1951, just before the hearing, there arrived an anonymous letter dated November 1, 1951. This, together with a newspaper clipping annexed to it, I have made part of the record. The writer of this letter suggests that the Missouri Pacific incident was the reason for Mr. Wyer's resignation as Chief Executive Officer of the Central Railroad of New Jersey, which was then in reorganization. I made a suitable investigation which disclosed the following facts: that Mr. Wyer rendered exceptionally valuable service in the Jersey Central reorganization, that none of his activities in that connection produced the slightest reflection on his integrity or ability, and that he terminated his connection with that reorganization afer his mission had been competently completed.

Mr. Wyer's technical qualifications and experience are fully disclosed in the record. Neither he nor his firm, William Wyer & Co., has ever been under retainer by the Pennsylvania Railroad, the main creditor here. His personal academic background is of the highest character and he has had wide experience in connection with the operation and reorganization of railroads. At the hearing on November 5, 1951 he explained to me that should his firm be retained by the Long Island Rail Road he will not participate in the fees, and that his firm would undertake no retainer in behalf of the Pennsylvania Railroad or its affiliates or subsidiaries. There is an understanding on his part and on mine that if his appointment be ratified he will, whenever he can with propriety, cooperate with General Draper in the solution of the problems which still confront the debtor.

It may not be relevant here, but I cannot end this memorandum without stating—and my statement is concurred in by all those who have had anything to do with the Long Island Rail Road for the past year—that General Draper has rendered to the creditors, to the debtor, and to the public, service of the highest order. He has shown imagination and ingenuity and has accomplished exceptionally valuable results.

The General Chairman of the General Grievance Committee, Brotherhood of Railroad Trainmen, took the trouble by letter dated October 31, 1951, photostats of which are included in the file, to comment on the good job that General Draper had done, and to suggest to me that I block the resignation if possible. This is an indication, to me at least, of the cordial relations that General Draper has enjoyed with the employees of the railroad, and it is a relationship which I firmly believe will continue under Mr. Wyer.

For several months Mr. Wyer has acted as consultant for the Long Island Rail

Road and in that capacity he has on numerous occasions discussed the railroad's problems with me. My own personal reaction is that he has an intelligent and informed approach to railroad operation and railroad reorganization, and is in every way reliable. I find as a fact that it is in the best interest of the debtor, of all those concerned in its affairs, and of the public (including the riding public) that Mr. Wyer be appointed to succeed General Draper. I have signed an order to this effect.